United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DEXILANT (DEXLANSOPRAZOLE) ANTITRUST LITIGATION | Master Case No. 3:25-cv-02785-JSC<br><br>**ORDER RE: MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 193 |

This antitrust lawsuit arises out of a settlement agreement ("Settlement Agreement") between the manufacturer of protein pump inhibitor Dexilant and a generics manufacturer. Now before the Court is the motion for sanctions against Plaintiffs brought by Defendants TWi Pharmaceuticals, Inc. and TWi Pharmaceuticals USA, Inc. ("TWi").[1] (Dkt. No. 193.)[2] Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES TWi's motion for sanctions. TWi's motion essentially (and improperly) asks the Court to grant summary judgment without having moved for summary judgment.

**DISCUSSION**

TWi argues Plaintiffs have failed to allege "facts they think they can prove that plausibly show how TWi would have been able to launch any generic Dexilant product [] earlier than it did." (Dkt. No. 193 at 8.) TWi contends the potential launch date offered by the Plaintiffs, June 15, 2020, is "objectively untenable" and Plaintiffs' pleadings to the contrary are also "untenable." (*Id.*) Rather, TWi claims "the objective evidence. . . demonstrate[s]" FDA demands meant TWi's

[1] Defendant Takeda Pharmaceuticals U.S.A., Inc. did not join the motion. (*See* Dkt. No. 193 at 1; Dkt. No. 198 at 6.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

original product could not be approved earlier and thus the "Settlement was procompetitive." (Dkt. No. 193 at 18.) TWi also contends "Plaintiffs have failed to conduct a reasonable and competent inquiry in bringing and maintaining this action, as Plaintiffs have always possessed sufficient information to disprove their allegations." (Dkt. No. 193 at 23.)

TWi moves for sanctions against Plaintiffs under Federal Rule of Civil Procedure 11(b), 28 U.S.C. § 1927, and the court's inherent authority. (Dkt. No. 193 at 7.) There are "[t]hree primary sources of authority [that] enable courts to sanction parties or their lawyers for improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). "Each of these sanctions alternatives has its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). Accordingly, the Court addresses each basis for sanctions raised by TWi in turn.

## I. RULE 11 SANCTIONS

First, TWi moves for sanctions under Federal Rule of Civil Procedure 11(b). (Dkt. No. 193 at 7.) Federal Rule of Civil Procedure 11(b) states that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . .
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

FED. R. CIV. P. 11(b). A court "may impose an appropriate sanction" for the violation of one of these provisions. FED. R. CIV. P. 11(c)(1). "Rule 11 is an extraordinary remedy, [and] one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). When "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127.

TWi's motion comes down to its belief that Plaintiffs have no "evidentiary basis whatsoever for their core allegation that TWi could have launched its original, amorphous ANDA product by June 15, 2020." (Dkt. No. 193 at 27.) TWi also believes that obtaining such proof is impossible. (*See id.*) The parties disagree as to what would have happened but-for the Settlement Agreement. (*Compare* Dkt. No. 193 at 11 ("[A]bsent the Settlement Agreement, TWi would not have been able to launch a generic product until expiration of the crystalline patents in 2023.") *with* Dkt. No. 198 at 12 ("[T]he settlement disincentivized TWi from seeking prompt FDA approval of its ANDA.").)

But regardless of which party eventually prevails on these factual disputes, the Court has previously determined Plaintiffs' factual allegations to be at least plausible. (*See* Dkt. No. 160 at 30-31 ("Defendants also argue Plaintiffs do not plausibly allege their injuries flowed from Defendants' agreement because TWi did not have FDA authorization to launch its own ANDA until September 2022, and so could not have launched its own generic by June 15, 2020. The Court disagrees.").) Moreover, discovery is both ongoing and, until recently, was slowed by discovery disputes among the parties. (*See* Dkt. No. 214.) Given Plaintiffs' allegations were sufficiently plausible to survive Defendants' motion to dismiss, and the ongoing discovery in this case, TWi has not shown Plaintiffs "factual contentions" lacked "evidentiary support" in violation of Rule 11(b)(3). Nor has TWi shown that Plaintiffs' legal contentions are not "warranted by existing law" in violation of 11(b)(2).

Instead, as Plaintiffs suggest, "TWi's motion effectively seeks reconsideration of the court's ruling on Defendants' motion to dismiss." (Dkt. No. 198 at 15.) TWi lends credence to this suggestion by conflating its sanctions motion with the ultimate disposition of the case. (Dkt. No. 193 at 8 ("Plaintiffs should be sanctioned and this case should be brought to an end.").) Yet, as the Advisory Committee Notes on Rule 11 provide:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position. . . [or]. . . to

> intimidate an adversary into withdrawing contentions that are fairly debatable . . . .

FED. R. CIV. P. 11, Advisory Committee Notes. When this Court previously considered the motion to dismiss, the Court tested the legal sufficiency of the Plaintiffs' allegations and found them "fairly debatable." (*See* Dkt. No. 160.) To reconsider that conclusion under a motion for sanctions would be to improperly retread the motion to dismiss.

TWi's arguments in favor of applying Rule 11 sanctions notwithstanding Plaintiffs' allegations having survived the motion to dismiss are unpersuasive. First, TWi argues "a motion to dismiss and a Rule 11 motion serve fundamentally different purposes and apply different standards." (Dkt. No. 193 at 25.) Similarly, TWi also claims that, under Ninth Circuit law, "the two standards operate independently." (*Id.*) While, unlike a motion to dismiss, Rule 11 does not require a court to accept "all well-plead factual allegations" as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor on a Rule 11 motion should a court wade into the merits of contested factual claims. *See Rich v. Taser Intern, Inc.*, No. 2:09–cv–02450–ECR–RJJ, 2012 WL 3155137, at *3 (D. Nev. Aug. 2, 2012) ("A Rule 11 motion is not a proper vehicle for arguing the merits of a case"); *Abdo v. United States*, No. 18-cv-01622, 2020 WL 1852379, at *4 (D. Colo. Apr. 13, 2020) ("To the extent Plaintiff is asking the court to address the merits of his claims, Rule 11 is not the appropriate vehicle for such a request."). Rather, courts regularly defer such considerations of the merits to summary judgment. *See, e.g., Truong v. Smith*, 28 F. Supp. 2d 626, 633 (D. Colo. 1998) (concluding that merits arguments "are more properly presented in a motion for summary judgment" than in a motion for sanctions); *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407, 420 (S.D.N.Y. 2003) (concluding that a motion for sanctions to dismiss an action "is an improper substitute for a motion for summary judgment"); *Almac SA v. Panalpina Ltd.*, No. 2:12–cv–951-TS, 2013 WL 1701116, at *3 (D. Utah Apr. 18, 2013) (rejecting a "challenge [to] the merits of Plaintiff's claims" because "Rule 11 is not the appropriate vehicle for such argument).

Second, TWi argues that, with the progress of discovery, Plaintiffs' "continued maintenance of their claims is sanctionable in light of the evidence in their possession" even if it might not have been at the motion to dismiss stage. (Dkt. No. 193.) Much of that evidence,

however, still turns on a factual disagreement about whether the lack of FDA approval for TWi's ANDA product was caused by the Settlement Agreement. (*Compare* Dkt. No. 193 at 27 ("There is no discovery that can undo FDA's serial CRLs or transform TWi's unapproved, amorphous ANDA product into an approved one.") *with* Dkt. No. 198 at 12 ("[The regulatory history] supports Plaintiffs' allegations that the settlement disincentivized TWi from seeking prompt FDA approval of its ANDA.").) So, while TWi claims the "moment has arrived" for Plaintiffs to prove the causation of their antitrust injury, (Dkt. No. 203 at 7), TWi is wrong: that moment remains a motion for summary judgment.

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3rd Cir. 2017), which TWi discusses in detail, (Dkt. No. 193 at 22-23; Dkt. No. 203 at 9-10), merely highlights the procedural impropriety of TWi's motion. *Wellbutrin* involved the review of the grant of summary judgment, not the imposition of sanctions. *Id.* at 142. Revealingly, TWi cites no case imposing Rule 11 sanctions under circumstances procedurally similar to those here.

So, TWi's motion for Rule 11 sanctions is DENIED.[3]

## II. 28 U.S.C. § 1927 SANCTIONS

Second, TWi asks for sanctions under 28 U.S.C. § 1927. (Dkt. No. 193 at 7.) 28 U.S.C. § 1927 states "[a]ny attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An award under this section requires a finding of "subjective bad faith," where counsel "knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citation omitted). Whether to impose inherent power sanctions is "a determination that rests in the sound discretion of the district court." *Fink*, 239 F.3d at 994.

TWi argues that, considering the evidentiary record, Plaintiffs' "refusal to withdraw or

[3] Plaintiffs also argue that TWi's motion for Rule 11 sanctions is untimely. (Dkt. No. 198 at 17-19.) Because this Court concludes that Rule 11 sanctions are substantively inappropriate, it need not reach the timing question.

amend their claims. . . constitutes precisely the kind of vexatious prolongation that Section 1927 was enacted to prevent." (Dkt. No. 193 at 26.) Yet, the Court previously held "Plaintiffs allege facts supporting a plausible inference TWi would have—in a hypothetical world without the challenged 2015 settlement—obtained ANDA approval by June 2020." (Dkt. No. 160 at 30.) TWi's disagreement with the substance of Plaintiffs' allegations is insufficient to support a finding of recklessness or knowing bad faith, as is required under § 1927.

No case cited by TWi awarded sanctions in similar circumstances. In *Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*, No. cv-16-01969-PHX-NVW, 2018 WL 3545291 (D. Ariz. July 24, 2018), a plaintiff "pursued about 160 cookie-cutter lawsuits removed to federal court and more than 1,000 such suits in Arizona state court." *Id.* at *2. The court awarded sanctions not because the plaintiff filed the complaint, but because, even after the defendant cured the alleged defect that prompted the lawsuit, the plaintiff's attorney "demand[ed] patently excessive and unreasonable attorney fees beyond any statutory basis and (2) prolong[ed] the lawsuit to extort such fees by forcing the defendant to incur its own legal expense to resist the mooted case and [the plaintiff's] fee demand." *Id.* at *6. Here, however, TWi has not cured the alleged violation and there is no suggestion that Plaintiffs are sustaining litigation merely to extort attorney fees. TWi also cites *Love v. Kardooni*, No. 19-cv-04706-MMC, 2021 WL 4481928 (N.D. Cal. Sept. 30, 2021), in which the court awarded § 1927 sanctions after the plaintiff continued to pursue a claim based on a business's lack of accessible parking despite stipulating that the business had no parking at all. *Id.* at *2-4. So, it is wholly inapposite. Finally, TWi cites *Wages v. IRS*, 915 F.2d 1230 (9th Cir. 1990) as an example of "prolonged litigation" leading to § 1927 sanctions. (Dkt. No. 193 at 20.) There, the pro se plaintiff tried to file an amended complaint that "did not materially differ from one which the district court had already concluded did not state a claim" and continued to "mov[e] for alterations in the district court's original judgment." *Id.* at 1235. *Wages*, too, is wholly inapposite.

So, TWi's motion for sanctions under 28 U.S.C. § 1927 is DENIED.

/

/

United States District Court
Northern District of California

**III. INHERENT AUTHORITY SANCTIONS**

Finally, TWi asks for sanctions under the Court's inherent authority. (Dkt. No. 193 at 7.) Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (citations omitted). These powers, however, "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Accordingly, the bad-faith requirement sets a "high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or recklessness that is "coupled with an improper purpose." *Fink*, 239 F.3d at 993-94. It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose. *See Burnett v. Conseco, Inc.*, 87 F.Supp.3d 1238, 1248-49 (N.D. Cal. 2015). For the reasons explained above, TWi has not come close to meeting its burden. *See Fink*, 239 F.3d at 994 ("[R]ecklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power.").

So, TWi's motion for sanctions under the Court's inherent authority is DENIED.

**CONCLUSION**

For the foregoing reasons, TWi's motion for sanctions is DENIED. The Court sets a further case management conference for 2:00 PM, October 14, 2026 via Zoom video. An updated joint case management statement is due one week in advance.

This Order disposes of Docket No. 193.

**IT IS SO ORDERED.**

Dated: September 8, 2026

JACQUELINE SCOTT CORLEY
United States District Judge